# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>SCOTT R. DRUMMOND,<br><br>Defendant. | Case No.  1:20-po-00240-SAB<br><br>MEMORANDUM DECISION AFTER COURT TRIAL |

## I.

## PROCEDURAL HISTORY

On October 1, 2020, a citation was filed charging Scott R. Drummond ("Defendant" or "Drummond"), with one count of violating 36 C.F.R. § 327.3(c), which provides that "[v]essels or other watercraft may be operated on the project waters, except in prohibited or restricted areas, in accordance with posted regulations and restrictions, including buoys."  (ECF No. 1.) After Defendant failed to make an initial appearance on October 15, 2020, the Court issued an arrest warrant and set a hearing to recall the warrant for November 19, 2020.  (ECF Nos. 2, 3, 4.) Defendant made an initial appearance on November 19, 2020, and the arrest warrant was recalled.  (ECF No. 7.)   On December 10, 2020, the Court held a status hearing via videoconference, at which: Defendant consented to appearing via video; the parties requested a bench trial; the Court ordered discovery to be produced; and a bench trial was set for February 5,

2021.  (ECF Nos. 8, 9.)  On January 29, 2021, the United States of America ("Government") filed a witness list, a trial brief, and an exhibit list.  (ECF Nos. 10, 11, 12.)

A court trial via Zoom videoconference commenced before the undersigned on February 5, 2021.  (ECF No. 14.)  Philip Tankovich appeared via video on behalf of the Government, and Defendant Drummond appeared *pro se* via video.  (Id.)  Both the Government and Defendant consented to conducting the trial via video.  (Id.)  One witness testified on behalf of the Government, Ranger Leah Peterson ("Ranger Peterson").  On the first day of trial, both the Government and Defendant examined the witness Ranger Peterson.  However, following issues presenting photographic evidence by Defendant, the Court continued the trial until February 10, 2021, to allow for Defendant to submit photographic evidence.  (ECF Nos. 13, 14.)

On February 10, 2021, Philip Tankovich appeared via video on behalf of the Government, and Defendant Drummond appeared *pro se* via video.  (ECF No. 16.)  Defendant indicated he was ready to proceed with the presentation of evidence.  However, the Government requested a brief recess.  After the recess, the Government informed the Court that it made a Henthorn request that initially came back negative,[1] however, the Government received information as to a potential issue and requested a continuance of the trial date.  After informing Defendant that the continuance was related to an obligation of the Government to provide Defendant with certain information and disclosures, the Court granted the Government's request and continued the trial until February 25, 2021.  (ECF No. 15.)

On February 25, 2021, Philip Tankovich appeared via video on behalf of the Government, and Defendant Drummond appeared *pro se* via video.  (ECF No. 18.)  The Government requested leave of the Court to reopen its case-in-chief and recall Ranger Peterson to "clean up the record."  Defendant stated he had no objection to the request, and the Court granted the request.  Following examination by the Government, Defendant presented questions to the witness.  Defendant also introduced photographic evidence and was permitted to testify in

---

[1]  "In *Henthorn*, the Ninth Circuit held that the government has a duty upon request to examine the personnel files of its law enforcement witnesses and disclose information material to witness credibility."  United States v. Rivaz-Felix, No. 12-CR-00340 AWI BAM, 2013 WL 1694449, at *2 (E.D. Cal. Apr. 18, 2013) (citing U.S. v. Henthorn, 931 F.2d 29 (9th Cir. 1991)).

a narrative fashion on behalf of himself.

Having considered the evidence presented during the trial of this matter, the Court issues the following order finding Defendant Scott R. Drummond guilty of a violation of 36 C.F.R. § 327.3(c).

## II.

## TRIAL

1.    February 5, 2021

On February 5, 2021, the Government called Ranger Peterson to testify.  Ranger Peterson testified she is employed as a Lead Park Ranger at New Hogan Lake with the United States Army Corps of Engineers ("USACE").  Ranger Peterson has been employed for approximately ten (10) years with the USACE, and has worked at New Hogan Lake for approximately eight and a half (8.5) years.  Ranger Peterson attended initial training for two (2) weeks, where she learned about rules and regulations, and how to write citations and reports.   Ranger Peterson also receives annual training which largely refreshes and supplements the previous training on these subjects.  Specifically, Ranger Peterson is a licensed boat operator with the USACE, and took a week-long course behind the wheel course, with testing on the rules and regulations.  Ranger Peterson's work includes managing the boundaries of New Hogan Lake, and as a part of that work, assists with completion of a boundary survey every three years, which is done in partial segments each of the three years.  Ranger Peterson affirmed she has a good understanding of the boundaries of New Hogan Lake, and confirmed New Hogan Lake is located in the Eastern District of California.

The Government introduced Exhibit 1.  Ranger Peterson testified the exhibit appeared to be a map of New Hogan Lake created by the USACE.  Ranger Peterson confirmed the exhibit properly identified the boundaries of the New Hogan Lake project, and the boundaries of the New Hogan Lake mark the area that is under the USACE administration.  Ranger Peterson testified she knows this based on her experience working in the New Hogan Lake area.  The Court accepted Exhibit 1 into evidence.

Ranger Peterson identified where the incident occurred at the Fiddleneck Day Use Area

1   on the map of New Hogan Lake.  Ranger Peterson identified two red dots on the map and

2   confirmed they indicated where buoys are located.

3        Ranger Peterson described the history of New Hogan Lake.  Ranger Peterson testified

4   New Hogan Lake is a water resource development project authorized by the Flood Control Act.

5   Ranger Peterson stated New Hogan Lake is a flood risk management project, which means the

6   lake has a dam with essentially two separate operations groups, with the dam operators

7   controlling the waterway, separate from the resource staff.  Ranger Peterson works as part of the

8   resource staff protecting the public and enforcing rules and regulations.  Ranger Peterson

9   testified the USACE operates New Hogan Lake.

10        Ranger Peterson confirmed the rules and regulations applicable to New Hogan Lake are

11   available to the public and posted throughout the park.  The Government introduced Exhibit 2.

12   Ranger Peterson confirmed she took photographs on January 24, 2021.  Ranger Peterson

13   confirmed she recognized Exhibit 2 as a photograph of a bulletin board and that it was a fair and

14   accurate representation of the bulletin board on such date.  When asked if the bulletin board had

15   been changed between the time of the incident and January 24, 2021, Ranger Peterson testified

16   the rules are always posted but that she could be not be certain the posting had not been changed

17   between the date of the incident and the date the photo was taken, but affirmed the rules are the

18   same and are always posted on the bulletin board.

19        The Government introduced Exhibit 3, and Ranger Peterson confirmed it was a fair and

20   accurate representation of the rules and regulations posted on the bulletin board as they existed

21   on January 24, 2021.  Ranger Peterson confirmed the regulations had not changed between the

22   incident and January 24, 2021.

23        When asked if there was any objection to admitting Exhibits 2 and 3 into evidence,

24   Defendant objected that the exhibits reflected postings that were in the bathroom area, but argued

25   the bathrooms were closed at the time.  The Court requested the Government to lay additional

26   foundation as to these exhibits.  Ranger Peterson then confirmed the photos reflected bulletin

27   boards posted outside of the restrooms, and confirmed they would be available for the public to

28   view even if the restrooms were closed at the time.  The Court received Exhibits 2 and 3 into

1 evidence.

2      Ranger Peterson confirmed the bulletin board is located in the Fiddleneck Day Use Area.

3 Ranger Peterson testified the regulations generally provide park rules as to vehicles and vessels,

4 and other general information for the public.

5      Ranger Peterson confirmed she was on duty at New Hogan Lake on the date of the

6 incident, July 22, 2020, and was patrolling the Fiddleneck Day Use Area in her marked patrol

7 vehicle.  Ranger Peterson then observed a vessel operating at high rate of speed, specifically a jet

8 ski that was operating around a restricted buoy.  Ranger Peterson explained that a jet ski is a one

9 to three person personal watercraft, that floats, and is operated like a bicycle with handlebars that

10 turn.  Ranger Peterson confirmed she has observed jet skis on New Hogan Lake in her eight and

11 half years working there, and based on her training and experience, a jet ski is a personal

12 watercraft capable of navigating on water.

13      Ranger Peterson described the buoy in question as a restricted buoy that is white with

14 orange markings, and black letters stating "slow, no wake."  The Government introduced Exhibit

15 4.  Ranger Peterson confirmed she took photographs on January 24, 2021, and recognized

16 Exhibit 4 as a picture of the restricted buoy.  Ranger Peterson confirmed Exhibit 4 was a fair and

17 accurate representation of the buoy involved in the incident with Defendant.  Ranger Peterson

18 confirmed the buoy did not change between the date of the incident and the date the picture was

19 taken, stating it possibly moved due to level of water, but that it was essentially in the same area,

20 and is the same identical buoy.  Defendant stated no objection to Exhibit 4, and Exhibit 4 was

21 received into evidence.

22      Ranger Peterson testified the slow buoys are generally used for safety purposes, to

23 identify obstructions, and to protect popular swimming areas.  Ranger Peterson testified she

24 observed Defendant circling around the safety buoy like it was his personal obstacle course.

25 When asked about the effect on the water, Ranger Peterson testified Defendant's jet ski was

26 creating a wake which, she defined as not idle speed, with water rushing behind the vessel.

27 Ranger Peterson stated Defendant was creating wake in the no wake zone.  After observing this

28 conduct, Ranger Peterson drove down to the shoreline and motioned and used signal lights to get

1  Defendant's attention.  Defendant proceeded back away from the shoreline, and Ranger Peterson
2  continued motioning and using signal lights.  Defendant circled around the buoy again, and
3  Ranger Peterson was then able to get Defendant's attention and called him into the shoreline.
4  Ranger Peterson asked for identification and Defendant provided a California Boater Card.  The
5  Boater Card stated the individual's name was Scott Drummond.  Ranger Peterson did not
6  specifically recall asking for Defendant's driver's license, but the license number is on the
7  citation and thus Ranger Peterson presumes she did receive the driver's license at that time as
8  well.

9          Ranger Peterson did not specifically remember seeing Drummond's photo on the
10 California Boater card or driver's license, but since she took down the number, she presumed she
11 would have seen the photo on the card.  On this issue, the Government asked Ranger Peterson
12 how she would react if the photo did not look like the individual, and Ranger Peterson stated she
13 would confirm the identification, and stated she did not react in that manner on the date in
14 question.  Ranger Peterson confirmed she recalled Drummond's appearance on the date in
15 question, and Ranger Peterson recognized Drummond during the videoconference and identified
16 him as the individual she interacted with on the date of the incident.  The Court then stated that
17 the record would reflect that Ranger Peterson identified Defendant Drummond as the individual
18 she interacted with on July 22, 2020.

19         Ranger Peterson testified that after she received the identification, she asked Drummond
20 if he realized the buoy he was circling was a no wake buoy, and Defendant stated he thought it
21 was for rocks, and Ranger Peterson thought that confirmed Defendant knew the buoy was in fact
22 for safety purposes.  After issuing the citation, Drummond asked if he could write the ticket off
23 through a declaration, and Ranger Peterson said no, to contest the citation Defendant would have
24 to appear in court.  Ranger Peterson then concluded the interaction with Drummond.

25         The Government concluded questioning by asking if based on Ranger Peterson's
26 experience and observations, whether Drummond was operating a jet ski on New Hogan Lake in
27 violation of posted regulations on the bulletin board, as well as on the buoy, and Ranger Peterson
28 confirmed yes Drummond was in violation.

Defendant then examined Ranger Peterson.  Defendant asked how far Ranger Peterson was from the buoy in question on July 22, 2020.  Based on the time of year, Ranger Peterson testified that she estimated she was approximately fifty (50) feet from the buoy.

Defendant then inquired about pictures he wished to introduce into evidence, and the Court reminded Defendant he was previously provided a link to upload the photos.  Defendant then tried to state he has a photo from July 8, 2020, that showed the water was hundreds of feet further than the Government's photo.  The Court reminded Defendant that he could only ask the witness questions at that point of the trial, not narratively testify at that time.

Ranger Peterson testified there are generally four buoys in that area of the lake, and that they are all of the same type.  Defendant asked what "no wake" means, and Ranger Peterson stated her definition, based on regulations and experience, is no white rushing water behind, no trailing wave, and idle speed, is generally no wake.  Ranger Peterson confirmed she was familiar with jet skis, and when asked if she was familiar with supercharged jet skis, Ranger Peterson answered she was familiar with "jet skis."  Defendant asked whether it is possible that just idling a jet ski would have white water behind the ski, and Ranger Peterson said no.  When asked if she has ridden a jet ski, Ranger Peterson confirmed yes she had, and has in fact patrolled on a jet ski through her job with the USACE.   When asked if there were rocks near or around the buoy, Ranger Peterson stated yes.  Defendant asked if whether it was possible if he was traveling at high rate of speed around the buoy, if he could have hit those rocks, and Ranger Peterson stated no.

On redirect examination, the Government asked whether when Ranger Peterson initially observed the individual riding the jet ski at a high rate of speed, if she continued to keep an eye on that individual the entire time until she came into contact with him, and Ranger Peterson answered yes, she never lost eyesight of him.  The Government had no further questions and Ranger Peterson was excused.  The Government rested its case.

Defendant then inquired about a picture showing rocks.  The Government clarified that he was referring to Exhibit 5, and in the interests of justice, the Government introduced Exhibit 5 into evidence.  Defendant asked if he could present his own photos.  To allow for Defendant to

1    provide the photographic evidence, the Court continued the trial until February 10, 2021.  (ECF
2    Nos. 13, 14.)

3              2.      February 25, 2021

4              The Government questioned Ranger Peterson concerning a letter of reprimand in her file.
5    Defendant then cross-examined Ranger Peterson.   Defendant asked a question in an
6    argumentative fashion, and the Court stated that type of argument was better reserved for when
7    Defendant presented his case, rather than when the witness was being questioned.   Defendant
8    had no further questions, and the Government rested its case-in-chief.

9              After the Court explained Defendant was under no obligation to present any argument or
10   case to the Court due to the Government bearing the burden, Defendant chose to present his case
11   and arguments to the Court.   Defendant was then sworn-in and was permitted to present his case
12   in a narrative fashion.

13             Defendant stated that on the date in question, there were multiple jet skis in the area, that
14   Defendant had just got to the area and had just circled around to pick up his sunglasses that had
15   fell in the water, and that he had no idea anyone was signaling him at the time.   Defendant stated
16   Ranger Peterson was hundreds of feet away on the land, and there were so many people over
17   there, Defendant thought she was dealing with an incident on shore.   Defendant heard something
18   on the Ranger Peterson's PA system, but Defendant could not understand what was being said.
19   Defendant came into shore to see what was going on, and that is when he gave her the license
20   and got the citation.   However, Defendant emphasized he was not using the buoy as an obstacle
21   course, and that there were other jet skis in the area that may have been doing that but it was not
22   Defendant.   On the date of the incident, Defendant stated he tried to tell Ranger Peterson that he
23   would not do that because he would not want to damage his expensive jet ski, but Ranger
24   Peterson said she did not want to hear argument at that time, and told him he was better off
25   paying.   Defendant stated he was in court fighting the citation because he believes he didn't do
26   anything wrong.

27             Defendant then directed the Court to Exhibit A.   Defendant argued the photograph taken
28   approximately a month before the incident, showed the buoy was much more than fifty feet out

in the water, and specifically more than Ranger Peterson testified.  Defendant explained there was no way he was only out as far as Ranger Peterson stated when Ranger Peterson alleged to signal him, and that is why he would not have heard or known she was calling him into shore. Defendant also argued Ranger Peterson was higher up on the shore than she claimed.  Defendant directed the Court to Exhibit B, which is a closer up photo than Exhibit A.  Defendant argued he was substantially more than fifty (50) feet away despite Ranger Peterson's testimony, and the discrepancy is highlighted by Ranger Peterson's personnel file where she previously lied to her employer.

The Government then cross-examined Defendant.  Defendant confirmed he was jet skiing on New Hogan Lake on July 22, 2020.  Defendant confirmed he has a California Boater card and is knowledgeable about jet skis.  Defendant confirmed that in order to control and steer a jet ski, the throttle must be on, and you cannot really steer without accelerating.  Defendant confirmed that while he was on a jet ski on July 22, 2020, he did approach a buoy, but denied doing a circle around a buoy.  Defendant conceded that when you are accelerating a jet ski, it is not idling, and when not idling, the jet ski does create wake.  Defendant maintained that he did not circle around the buoy or create wake around the buoy.

The Government asked whether Defendant had admitted circling the buoy to pick up sunglasses, and Defendant stated it was just outside the buoy, and the back of the jet ski was outside the buoy area.  Defendant conceded the buoys are meant to alert people of things in the area, and that Defendant believed they were there to alert people of rocks.  Defendant conceded he saw the buoy, and knows they are meant to communicate a message.  Defendant did not concede he knew what the writing on the buoy said.  Defendant did concede it was daylight during the time, and then somewhat conceded that it would be possible to read the buoy as there was no glare around the entire buoy when he was circling near it.

The Court then indicated to the Government that additional testimony from Ranger Peterson concerning her location on the shore would be helpful.  The Government recalled Ranger Peterson to testify.  Ranger Peterson explained that Exhibits A and B did reflect the approximate location of the incident.  Ranger Peterson stated she was not hundreds of feet away,

1   but rather, her vehicle was right up to the shoreline with the safety lights on, and was parked only

2   a couple of feet from the shoreline.  The Court asked Ranger Peterson when the picture admitted

3   as Exhibit 5 was taken, and Ranger Peterson stated the picture was taken in January of 2021.

4   The Court asked what the difference in the water level was versus July of 2020, and Ranger

5   Peterson conceded the buoy was a little further out, but her vehicle placement was the same in

6   relation to the shoreline.  The Court asked whether there were other jet skis on the lake, and

7   Ranger Peterson stated it was a popular jet ski area, but that she never lost sight of Drummond

8   because she watched him circle around the buoy.

9        Defendant then stated there was a video he had trouble uploading that showed certain

10   rocks were completely underwater at the time.  Defendant also emphasized that he knew there

11   were rocks in the area, that he always goes slow in that area, and that he warned anyone using his

12   jet ski that day to go slowly in that area to avoid the rocks.

13        The Government rested its case, and the Defendant stated he had no other evidence to

14   submit to the Court.

15   **III.**

16   **DISCUSSION AND DECISION**

17        Defendant has been charged with a violation of 36 C.F.R. § 327.3(c).  Section 327.3(c)

18   provides that: "Vessels or other watercraft may be operated on the project waters, except in

19   prohibited or restricted areas, in accordance with posted regulations and restrictions, including

20   buoys."  36 C.F.R. § 327.3(c).  Thus, to prove a violation of 36 C.F.R. § 327.3(c), it is the

21   Government's burden to establish beyond a reasonable doubt that Defendant Drummond: (1)

22   operated a vessel or other watercraft; (2) operated said vessel or watercraft on project waters; and

23   (3) acted in violation of posted regulations and restrictions, including buoys.  Id.; see also United

24   States v. Philhart, No. CR F 07-0025 LJO, 2009 WL 746477 (E.D. Cal. Mar. 20, 2009).

25        Section 327.3 provides that it "pertains to all vessels or watercraft, including, but not

26   limited to, powerboats, cruisers, houseboats, sailboats, rowboats, canoes, kayaks, personal

27   watercraft, and any other such equipment capable of navigation on water or ice, whether in

28   motion or at rest."  36 C.F.R. § 327.3(a).  Section 327.1 provides that "[t]he term 'project' or

1   'water resources development project' refers to the water areas of any water resources

2   development project administered by the Chief of Engineers, without regard to ownership of

3   underlying land, to all lands owned in fee by the Federal Government and to all facilities therein

4   or thereon of any such water resources development project."  36 C.F.R. § 327.1(c).  Finally, the

5   "regulations covered in this part 327 shall be applicable to water resources development projects,

6   completed or under construction, administered by the Chief of Engineers, and to those portions

7   of jointly administered water resources development projects which are under the administrative

8   jurisdiction of the Chief of Engineers."  36 C.F.R. § 327.0.

9         The Court finds the testimony of Ranger Peterson and other evidence submitted

10   establishes beyond a reasonable doubt, that on July 22, 2020: (1) Defendant operated a jet ski,

11   which is a personal watercraft capable of navigation on water; (2) Defendant's conduct occurred

12   on New Hogan Lake, which is a water resources development project administered by the Chief

13   of Engineers of the U.S. Army Corps of Engineers; and (3) Defendant's conduct was in violation

14   of posted regulations and restrictions, specifically, by circling a "no wake" buoy at a high rate of

15   speed, thereby creating wake in a no wake zone.

16         While the Government belatedly provided information pertaining to a letter of reprimand

17   in Ranger Peterson's personnel file, the Court nonetheless finds Ranger Peterson's testimony

18   concerning the specific incident in question to be reliable.  During the initial testimony given on

19   the first date of trial, February 5, 2021, Ranger Peterson was not asked any questions regarding

20   complaints or letters of reprimand in her personnel file.  In testimony given on February 25,

21   2021, Ranger Peterson stated that prior to the trial, she was asked by the Government's counsel

22   whether there were any complaints in her file, and Peterson told the Government there were not.

23   Ranger Peterson stated she answered this way because she thought the question pertained to

24   complaints filed by the public about her actions as an officer.  Ranger Peterson explained the

25   impact the events surrounding her letter of reprimand impacted her, and why she holds telling the

26   truth in high regard given the responsibility of her position.

27         Given the circumstances surrounding the letter of reprimand in relation to the totality of

28   the testimony provided by Ranger Peterson, including her basis of knowledge regarding

watercraft, New Hogan Lake, and the applicable rules and regulations, the Court finds Ranger Peterson's testimony to be reliable and trustworthy as to the events that occurred on July 22, 2020.

Defendant testified and argued he did not believe the regulations were viewable because the bathrooms were closed; that Ranger Peterson was further away from the shoreline and the buoy then she testified; that Defendant always operated his jet ski slow in that area because of rocks; that there were other people on jet skis in the area; and that he was not circling around the buoy like an obstacle course but rather only picking up his sunglasses and never actually crossed the line the buoy marked off.  Nonetheless, the Court finds the evidence and testimony presented at trial refutes these arguments.  Specifically, photographic evidence and the testimony given by Ranger Peterson regarding: New Hogan Lake as a project water and its particular boundaries and areas; the location and description of the buoys; and the location and availability to the public of the posted regulations.  The Court finds Ranger Peterson's testimony describing the personal observation of the watercraft operated by Defendant to be significant, particularly the specific testimony that Defendant was never out of the line of sight of Ranger Peterson during the incident on July 22, 2020.

Accordingly, based on the evidence presented by the parties during the trial, the Court finds that the Government has proved beyond a reasonable doubt that Defendant Scott R. Drummond is guilty of a violation of 36 C.F.R. § 327.3(c).  The evidence and arguments presented by Defendant did not refute the evidence of guilt presented by the Government.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**IV.**

**CONCLUSION AND ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1.      Defendant Scott R. Drummond is guilty of a violation of 36 C.F.R. § 327.3(c);

2.      This matter is set for sentencing on March 24, 2021, at 11:00 a.m. in Courtroom 9;

3.      The parties may file a sentencing memorandum one week prior to the sentencing hearing; and

4.      Defendant is required to be present for sentencing.

IT IS SO ORDERED.

Dated:    **March 10, 2021**

_____
UNITED STATES MAGISTRATE JUDGE